KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1273-JLS |
| | ) | |
| Plaintiff, | ) | Date:   May 23, 2008 |
| | ) | Time:  1:30 p.m. |
| | ) | |
| v. | ) | The Honorable Janis L. Sammartino |
| | ) | |
| | ) | |
| JUAN CARLOS LEDESMA-LOZANO, | ) | **UNITED STATES' RESPONSE IN** |
| | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **MOTIONS TO** |
| Defendant. | ) | |
| | ) | **1)      COMPEL DISCOVERY** |
| | ) | |
| | ) | **TOGETHER WITH STATEMENT OF** |
| | ) | **FACTS, MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES** |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

        The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt,

United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its

Response in Opposition to Defendant's above-referenced Motions.  This Response in Opposition is

based upon the files and records of the case, together with the attached statement of facts and

memorandum of points and authorities.

/ /

/ /

# I

## STATEMENT OF THE CASE

On April 23, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Juan Carlos Ledesma-Lozano ("Defendant") with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b).  On April 24, 2008, Defendant was arraigned on the Indictment and pled not guilty.  On May 9, 2008, Defendant filed a discovery motion.  The United States files the following response in opposition to Defendant's discovery motion.

# II

## STATEMENT OF FACTS

### A.    OFFENSE CONDUCT

On April 29, 2007, officers with the United States Marshals Service Task Force in San Diego, California, arrested Defendant on a felony warrant and booked him into county jail.  While in county jail, an agent with Immigration and Customs Enforcement (ICE) conducted a field interview and determined Defendant was a citizen and national of Mexico and placed an immigration hold (I-247) pending Defendant's release from state custody.

On March 31, 2008, Defendant released from state custody and referred to ICE custody at their field office in San Diego, California, for processing.    An ICE agent conducted a record check and reviewed various sources of information confirming Defendant was a citizen and national of Mexico having been deported or removed from the United States on at least one occasion.

On March 31, 2008, at approximately 11:48 a.m., Defendant was advised of his Miranda rights in the Spanish language.  Defendant acknowledged that he understood his rights and he agreed to waive his Miranda rights and speak with government agents without the presence of an attorney.  Defendant admitted to being a citizen and national of Mexico.  Defendant said he last entered the United States through the hills near Tecate, California.  Defendant admitted that he had never applied for a waiver of deportation or removal, and upon entry into the United States, he did not present himself for inspection before an immigration officer.  Defendant remembered having an immigration hearing on November 3, 2005, and admitted that the immigration judge ordered him to be deported.  Defendant said he had been deported or removed from the United States on at least five prior occasions.

1

### B.     DEFENDANT'S IMMIGRATION HISTORY

2        Defendant is a citizen and national of Mexico.  Defendant was ordered excluded, deported, and

3    removed from the United States to Mexico pursuant to an order issued by an immigration judge on

4    November 3, 2005.  Pursuant to that order, Defendant was physically removed from the United States

5    to Mexico through the San Ysidro, California, Port of Entry on November 3, 2005.  Defendant has been

6    removed from the United States on at least five prior occasions.  After Defendant's last deportation,

7    there is no evidence in the reports and records maintained by the Department of Homeland Security that

8    Defendant applied to the U.S. Attorney General or the Secretary of the Department of Homeland

9    Security to lawfully return to the United States.

10

### C.     DEFENDANT'S CRIMINAL HISTORY

11        Defendant has an extensive criminal history.  The United States, propounds that Defendant has

12    at least twelve criminal history points placing him in Criminal History Category V.

13        On June 28, 2001, Defendant was convicted of reckless driving, a misdemeanor, in violation of

14    the California Vehicle Code § 23103, and received a sentence of 3 years probation.

15        On August 15, 2005, Defendant violated his probation, which was revoked, and Defendant was

16    sentenced to 90 days in jail.  On April 25, 2005, Defendant was convicted of inflicting corporal injury

17    on a spouse/cohabitant, a misdemeanor, in violation of California Penal Code § 273.5, and received a

18    sentence of 18 days in jail and 3 years probation.  On August 15, 2005, Defendant was convicted of: (1)

19    battery, a misdemeanor, in violation of California Vehicle Code § 242, and received a sentence of 8 days

20    in jail and 3 years probation; (2) inflicting corporal injury on a spouse/cohabitant, a felony, in violation

21    of California Penal Code § 273.5, and received a sentence of 240 days in jail and 3 years probation; and

22    (3) driving under the influence, a misdemeanor, in violation of California Vehicle Code § 23152.

23    Defendant violated his probation, which was revoked, with regard to his felony conviction, on August

24    29, 2007.

25        On July 10, 2006, Defendant was convicted of driving without a license, a misdemeanor, in

26    violation of California Vehicle Code § 12500, and received a sentence of 3 years probation.

27        On September 18, 2007, Defendant was convicted of driving under the influence, a

28    misdemeanor, in violation of California Vehicle Code § 23152, and was sentenced to 365 days in jail.

### III

**THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS
ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES**

**A.     DEFENDANT'S MOTION TO COMPEL DISCOVERY SHOULD BE DEINED**

As of the date of this Motion, the United States has produced 155 pages of discovery (including reports of the arresting officers and agents, a criminal history report, documents concerning Defendant's prior convictions and immigration history) and one DVD-ROM containing Defendant's videotaped, post-arrest statement.  By the motion hearing on May 23, 2008, the United States will have produced the tapes containing the audio recording of Defendant's hearing before the immigration judge on November 3, 2005.  The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.").  At this point the United States has received **no** reciprocal discovery.  In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

### 1, 2.     Defendant's Statements And Arrest Reports

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers.  If additional reports by United States' agents come to light, the United States will supplement its discovery.  The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial."  However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents.  Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents.  See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984).  Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial.  Moreover,

1  the United States will not produce rebuttal evidence in advance of trial.  See United States v. Givens,

2  767 F.2d 574, 584 (9th Cir. 1984).

3        The United States also objects to Defendant's request for an order for production of any rough

4  notes of United States' agents that may exist.  Production of these notes, if any exist, is unnecessary

5  because they are not "statements" within the meaning of the Jencks Act unless they contain a

6  substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the

7  witness.  See discussion infra Part III.A.19; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir.

8  1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).  The production of agents'

9  notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided

10  defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659

11  F.2d 932, 941 (9th Cir. 1981).  In addition, the United States considers the rough notes of its agents to

12  be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

13                **3.    Expert Witnesses**

14        The United States has complied and will continue to comply with Fed. R. Crim.  P. 16(a)(1)(G)

15  and provide Defendant with notice and a written summary of any expert testimony that the United States

16  intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.  In addition, the

17  United States will provide Defendant with any scientific tests or examinations, in accordance with Fed.

18  R.  Crim.  P. 16(a)(1)(F).

19                **4.    *Brady* Material**

20        The United States has complied and will continue to comply with its obligations under Brady

21  v. Maryland, 373 U.S. 83 (1963).  Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the

22  government need not disclose "every bit of information that might affect the jury's decision."  United

23  States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980).  The standard for disclosure is materiality.  Id.

24  "Evidence is material under Brady only if there is a reasonable probability that the result of the

25  proceeding would have been different had it been disclosed to the defense."  United States v.

26  Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

27        The United States will also comply with its obligations to disclose exculpatory evidence under

28  Brady v. Maryland, 373 U.S. 83 (1963).  Furthermore, impeachment evidence may constitute Brady

1    material "when the reliability of the witness may be determinative of a criminal defendant's guilt or

2    innocence."  United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks

3    omitted).  However, the United States will not produce rebuttal evidence in advance of trial.  See United

4    States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

5                          **5.    Any Information That May Result in a Lower Sentence**

6            Defendant claims that the United States must disclose information affecting Defendant's

7    sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

8    (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

9            The United States is not obligated under Brady to furnish a defendant with information which

10   he already knows.  See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule

11   of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

12   defendant.  In such case, the United States has not suppressed the evidence and consequently has no

13   Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

14           But even assuming Defendant does not already possess the information about factors which

15   might affect his guideline range, the United States would not be required to provide information bearing

16   on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior

17   to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No

18   [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

19   remains in value.").  Accordingly, Defendant's demand for this information is unwarranted.

20                          **6.    Defendant's Prior Record**

21           The United States has already provided Defendant with a copy of his criminal record and related

22   court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

23                          **7.    Any Proposed 404(b) or 609 Evidence**

24           The United States has complied and will continue to comply with its obligations under

25   Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid.").  The United States has already

26   provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

27           Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant

28   with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it

     intends to use at trial.  See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted

for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts.  The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

### 8, 10.  Evidence Seized and Tangible Objects

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial.  See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 9.    Request for Preservation of Evidence

The United States will preserve all evidence pursuant to an order issued by this Court.  The United States objects to an overbroad request to preserve all physical evidence.  The United States does not oppose Defendant's request to inspect the firearm and ammunition possessed by and seized from Defendant in the instant offense.

### 11, 12, 14, 19.  Evidence of Bias or Motive to Lie / Impeachment Evidence/ Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling / *Giglio* Material

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).  Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing.  See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959).  The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum.  At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her

1    testimony.  The United States is unaware of any evidence that any United States witness' ability to

2    perceive, recollect, communicate or tell the truth is impaired.

3    **13.    Evidence of Criminal Investigation of Any United States' Witness**

4    The United States objects to Defendant's overbroad request for evidence of criminal

5    investigations by federal, state, or local authorities into prospective government witnesses.  The United

6    States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and

7    all evidence that a prospective government witness is under investigation by federal, state or local

8    authorities.  Moreover, as discussed above, the United States has no obligation to disclose information

9    not within its possession, custody or control.  See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir.

10   1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files

11   outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th

12   Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was

13   aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965)

14   (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of

15   United States and does not apply to a recording in possession of state authorities).

16   The United States recognizes and will comply with its obligations under the rules of discovery

17   and Ninth Circuit precedent to disclose exculpatory and impeachment information.  The United States

18   also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other

19   motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959),

20   when it files its trial memorandum.

21   **15, 16.    Names of Witnesses and Witness Addresses**

22   The United States objects to Defendant's request for witness addresses and phone numbers.

23   Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the

24   United States.  See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v.

25   Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974).  None of the cases cited

26   by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses.  There

27   is no obligation for the United States to provide addresses of witnesses that the United States intends

28   to call or not call.  Therefore, the United States will not comply with this request.

1    The United States will produce the names of witnesses it intends to call at trial.  Defendant has

2    already received access to the names of potential witnesses through the discovery sent to his counsel.

3    The United States is not aware of any individuals who were witnesses to Defendant's offense except

4    the law enforcement agentes who apprehended him.  The names of these individuals have already been

5    provided to Defendant.

6                    **17.    Statements Relevant to the Defense**

7    The United States objects to the request for "any statement relevant to any possible defense or

8    contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent.  Therefore,

9    the United States will only disclose relevant statements made by Defendant pursuant to this request.

10                    **18.    Jencks Act Material**

11    The United States will fully comply with its discovery obligations under the Jencks Act.  For

12    purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or

13    otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded

14    transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury.  See

15    18 U.S.C. § 3500(e).  Notes of an interview only constitute statements discoverable under the Jencks

16    Act if the statements are adopted by the witness, as when the notes are read back to a witness to see

17    whether or not the government agent correctly understood what the witness said.  United States v.

18    Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).

19    In addition, rough notes by a government agent "are not producible under the Jencks Act due to the

20    incomplete nature of the notes."  United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

21    Production of this material need only occur after the witness making the Jencks Act statements

22    testifies on direct examination.  See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994).

23    Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady)

24    need not be revealed until such time as the witness testifies on direct examination if such material is

25    contained in a witness's Jencks Act statements.  See United States v. Bernard, 623 F.2d 551, 556 (9th

26    Cir. 1979).  Accordingly, the United States reserves the right to withhold Jencks Act statements of any

27    particular witness it deems necessary until after they testify.

28    / /

1

### 20.    **Personnel Records**

2    As discussed, *infra* Part III.A.21, the United States will instruct all relevant agencies to review

3    the personnel files of government witnesses for information pertaining to dishonesty or impeachment.

4    Defendant has not cited any authority that requires the United States to produce "citizen complaints and

5    other related internal affairs documents." [Def Motion at 6.]   The case cited by Defendant, Pitchess v.

6    Superior Court, 11 Cal.3d 531, 539 (1974) has been superceded by statute.  See Fagan v. Superior Court,

7    111 Cal. App.4th 607 (2003).   Moreover, Pitchess involved a criminal case in which a defendant who

8    claimed to have acted in self-defense sought evidence as to the police officers' use of force on previous

9    occasions.  Pitchess, 11 Cal. 3d at 534, 535.  Pitchess is simply inapplicable to Defendant's case.

10    ### 21.    ***Henthorn* Materials**

11    The United States has complied and will continue to comply with United States v. Henthorn, 931

12    F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and

13    prosecution review the personnel files of the federal law enforcement inspectors, officers, and special

14    agents whom the United States intends to call at trial and disclose information favorable to the defense

15    that meets the appropriate standard of materiality.  See United States v. Booth, 309 F.3d 566, 574 (9th

16    Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).   If the materiality

17    of incriminating information in the personnel files is in doubt, the information will be submitted to the

18    Court for an in camera inspection and review.

19    Defendant's request that the specific prosecutor in this case review or oversee the personnel files

20    is unwarranted and unnecessary.  Henthorn expressly provides that it is the "government," not the

21    prosecutor, which must review the personnel files.   Henthorn, 931 F.2d at 30- 31.  Accordingly, the

22    United States will utilize its typical practice for review of these files, which involves requesting

23    designated representatives of the relevant agencies to conduct the reviews.  The United States opposes

24    the request for an order that the prosecutor personally review or oversee the review of personnel files.

25    ### 22.    **Alien File ("A-File")**

26    The United States objects to Defendant's request for a "full copy" of his Alien File ("A-File").

27    In addition, the United States objects to Defendant's request to inspect his A-File.  This information is

28    equally available to Defendant through a Freedom of Information Act request.  Even if Defendant could

not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information. The A-File contains information that is not discoverable like internal government documents and witness statements. See Fed. R. Crim. P. 16(a)(2). Witness statements would not be subject to production until after the witness for the United States testifies and provided that a "motion" is made by Defendant. See Fed. R. Crim. P. 16(a)(2) and 26.2. Thus, the A-File associated with Defendant need not be disclosed.

Defendant claims that the A-File must be disclosed because (1) it may be used in the United States' case-in-chief; (2) it is material to his defense; and (3) it was obtained from or belongs to him. See Fed. R. Crim. P. 16(a)(1)(E). The United States will produce documents it intends to use in its case-in-chief. Evidence is material under Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different. See United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). However, Defendant has not shown how documents in the A-File are material. Finally, Defendant does not own the A-File. It is an agency record. Cf. United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records). Should the Court order inspection of relevant documents from the A-File, the United States will facilitate the inspection as it does in other cases.

### 23.    Audio Recordings of Immigration Hearings

As stated above, by the motion hearing on May 23, 2008, the United States will produce tapes containing the audio recording of Defendant's immigration hearing held on November 3, 2005.

### IV

### CONCLUSION

For the foregoing reasons, the United States requests the Court deny Defendant's Motion to Compel Discovery.

DATED: May 9, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR1273-JLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| v. | ) | |
| | ) | |
| JUAN CARLOS LEDESMA-LOZANO, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age.

My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of **The United States'**
**Response in Opposition to Defendant's Motion to Compel Discovery** on the following parties by
electronically filing the foregoing with the Clerk of the District Court using its ECF System, which
electronically notifies them.

> Kathryn Thickstun Leff, Esq.
> Law Offices of Kathryn Thickstun Leff
> 110 West C Street, Suite 2108
> San Diego, California 92101
> Tel:  (619) 523-5375
> Fax:  (619) 523-5376
> Email: ktleff@cox.net
> *Lead Attorney for Defendant*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 9, 2008.

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney